# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: **H.R.**

**No. 15-0162** (Mercer County 14-JA-094-WS)

## MEMORANDUM DECISION

Petitioner Father B.R., by counsel Michael Magann, appeals the Circuit Court of Mercer County's January 22, 2015, order terminating his parental rights to H.R. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Michael Jackson, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Ryan J. Flanigan, filed a response on behalf of the child and in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights to the children without granting him a post-adjudicatory improvement period.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 17, 2014, the DHHR filed an abuse and neglect petition against H.R.'s parents, alleging that in a previous case they had their parental rights to five other children involuntarily terminated. The petition further alleged that five-day-old H.R., who was born premature and with a heart condition, had warm, red skin and a warm, red face due to being covered with three blankets. Additionally, the parents failed to pick up H.R.'s prescription heart medication, and failed to provide H.R. with adequate diapers or clothing. The parents were also observed walking with H.R. outside during a rainstorm. The DHHR further alleged drug use by both parents. Petitioner was observed by a DHHR worker as being under the influence of drugs during a home visit, where he was staggering, slurring his speech, and was unable to sit or stand without falling over. Petitioner was also unable to follow the Sheriff's directions when he was later arrested for failure to appear on several warrants. Both parents later tested positive for drugs. Specifically, petitioner tested positive for barbiturates and also had Fioricet pills on his person, for which he could not produce a prescription.

---

[1]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

On November 7, 2014, the circuit court held an adjudication hearing. Witnesses testified to the allegations in DHHR's petition as well as the following: (1) on May 28, 2014, petitioner tested positive for barbiturates; (2) H.R. was without her medication for a period of time because the parents left the medication in the residence upon their eviction; (3) a new prescription was obtained at a new hospital but never picked up by the parents; and (4) failure to provide the medication created a life-threatening situation for H.R. A DHHR worker testified that the issues from the previous case, including lack of consistent living environment, drug abuse, irregular visitation, concerns about parenting ability, and issues with child nutrition, had not been overcome. Additionally, the DHHR worker testified that petitioner attended only eight out of nineteen scheduled visits. At the close of the evidence, the circuit court found, by clear and convincing evidence, that H.R. was a neglected child.

On January 1, 2015, the circuit court held a dispositional hearing. A DHHR worker again testified that substance abuse and instability remain an issue with the parents and that H.R. had a medical diagnosis of failure to thrive related to abuse and neglect. The worker further testified that multiple providers attempted to provide services, including adult life skills, parenting, and drug screening services. The testimony established that the parents initially cooperated with services but then actively avoided the provider. The mother testified that she and petitioner had medical issues that resulted in surgical intervention, limited their movement, and made it difficult for them to visit H.R. The mother also testified that they did not try to call any DHHR worker about their inability to visit H.R. The circuit court found that the DHHR provided services to petitioner and that petitioner did not participate in those services. The circuit court further found that, although petitioner had health issues that may have complicated his participation, he should have been able to demonstrate more cooperation, given his ability to attend all of his doctor's appointments and these court hearings. The circuit court also found that the same issues of instability and drug abuse that were present in the prior termination were present in the instant case. The circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and terminated petitioner's parental rights. The circuit court entered the order terminating petitioner's parental rights on January 22, 2015. This appeal followed.

The Court has established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record

2

viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner assigns error to the circuit court's termination of his parental rights to H.R. without granting him a post-adjudicatory improvement period.[2] West Virginia Code § 49-6-12(b) provides circuit courts discretion in ruling on motions for post-adjudicatory improvement periods. From our review of the record, it is clear that the evidence introduced at the dispositional hearing did not support granting petitioner an improvement period. The circuit court found that petitioner did not cooperate with the DHHR after the adjudicatory hearing. Specifically, petitioner failed to regularly visit H.R., did not fully participate in drug screening, and failed to work with in-home service providers. As such, petitioner failed to meet the burden of establishing that he was likely to fully participate in an improvement period. While petitioner argues this was due to limitations from medical problems, those medical problems did not excuse the complete lack of effort by petitioner after the adjudication. In fact, the circuit court found that, although petitioner had health issues that may have complicated his participation, he should have been able to demonstrate more cooperation, given his ability to attend all doctor's appointments and court hearings. As such, there is nothing in the record that demonstrated that petitioner was likely to comply with the terms of an improvement period. Thus, the circuit court did not err in denying him a post-adjudicatory improvement period.

Likewise, this same evidence established that petitioner was unlikely to substantially correct the conditions that led to the abuse and neglect in the near future. This is especially true in light of the fact that petitioner's parental rights to five other children were involuntarily terminated in a previous case, with the same unabated, underlying issues. The circuit court presided over that prior case and noted that in the instant matter, petitioner had the same untreated substance abuse issues, lacked employment, lacked proper parenting skills, and lacked a stable home environment for H.R. The circuit court found that petitioner disregarded H.R.'s health and well-being and that his failure to provide H.R. with the necessary medication created a life-threatening medical situation. Given that the circuit court found that the conditions of abuse and neglect could not be substantially corrected in the near future, and that termination was necessary for the child's welfare, we find no error in the circuit court's determination that termination of petitioner's parental rights was in the child's best interests. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights on these findings.

For the foregoing reasons, we find no error in the circuit court's January 22, 2015, order, and we hereby affirm the same.

Affirmed.

---

[2]There is no evidence on the record that petitioner made a motion for a post-adjudicatory improvement period before his appeal.

**ISSUED**: **March 7, 2016**

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II